### LOREN MATHISON

*v.*

### ELI S. PRESCOTT.

1. JUDICIAL SALE — *ground for setting aside.* Where the plaintiff's attorney agreed with a defendant in a suit at law to give him notice before taking any further proceedings, but took a default and had the damages assessed without any such notice, and the attorney then assured the defendant that no proceedings should be taken on the judgment without notice to him or his attorneys; and afterwards, without any notice, an execution was issued and levied on the defendant's land, worth $10,000, and sold to the plaintiff in execution for $103.66, and a sheriff's deed made without the knowledge of the defendant in the execution, it was *held*, that the defendant had the right to rely on the promise made by the plaintiff's attorney, and that the subsequent proceedings

without notice were a fraud upon the defendant, and as against the plaintiff in the execution and his assignee chargeable with notice a court of equity would set aside the sale and allow a redemption.

2. NOTICE—*of equity, by possession.* When a person purchases property in the open and visible possession of another, he will be chargeable with notice of all the claims, legal or equitable, of the party in possession.

APPEAL from the Superior Court of Cook County; the Hon. SAMUEL M. MOORE, Judge, presiding.

Mr. ALLAN C. STORY, for the appellant.

Messrs. GOUDY, CHANDLER & SKINNER, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It is urged by appellant that the court below erred in decreeing the relief asked by complainant; — that Coolidge recovered a judgment the justice and validity of which is not questioned; that an execution was regularly issued, the land levied on, the sale regularly made, and Coolidge became the purchaser. The time for a redemption expired, and, no redemption having been made, the sheriff made a deed to the holder of the certificate of purchase, who had purchased it and taken an assignment.

The land at the time of the levy and sale seems to have been worth $10,000 or more. The sheriff at the sale struck it off to Coolidge, the plaintiff in execution, on his bid of $103.66, and executed and delivered to him a certificate of purchase. The land was then, and had for some time previously been, in the actual possession of appellee by himself or tenants, and was so possessed when appellant purchased.

Coolidge assigned the certificate of purchase to his attorney, who afterwards assigned it to the son of the judgment creditor. The sheriff, after the expiration of fifteen months from the sale, conveyed the land to him as the holder of the certificate, and he, four days thereafter, sold it to appellant for a consideration, as it is claimed, of $9,600. A few days later appellant demanded possession

of the premises from appellee's tenant, which was refused. Appellee was then absent in Europe, but on his return he filed this bill, asking to be permitted to redeem, and to set aside the sheriff's sale and the deed to appellant. On a hearing in the court below the relief prayed was granted, and Mathison appeals.

It appears that Coolidge was the tenant of appellee, in the year 1871, and in May, 1872, the latter issued a distress warrant against Coolidge for the collection of the rent, and the property distrained was replevied by suit in the circuit court of Cook county, and the distress proceedings were abandoned. It is claimed, and the evidence tends to show, that Coolidge's attorney agreed to give the opposite party notice before he should take any further proceedings in the replevin suit, but took a default, and had the damages assessed at $75, without any such notice. That Coolidge's attorney informed Prescott of the recovery of the judgment, but assured him that no proceeding would be taken on the judgment without notice to him or his attorney. But all the subsequent steps were taken, resulting in a sheriff's deed, without any pretense that any such notice was ever given.

As between appellee and Coolidge this agreement between the attorney of the latter and appellee was binding, and its violation, whether intentionally or from mere inadvertence, operated as a fraud on appellee. The attorney was under no obligations, it is true, to make the agreement, but having made it, he and his client were bound to its performance. This promise from a member of the profession could surely be relied on implicitly by appellee. It was not negligence or over-credulity on his part to rely on such an assurance by the counsel on the other side. He was not required to believe that the attorney only made the promise to get an undue and fraudulent advantage for his client. To have done so would have been a gross breach of professional duty, that he nor any one else had the right to suspect. And if, as we must suppose, the promise escaped the

recollection of the attorney, appellee can not be charged with the consequences flowing from his defect of memory.

Had the attorney not made the promise, can any one suppose appellee would have permitted more than $10,000 worth of real estate to be sold and pass redemption, and the title pass to the purchaser, for the comparatively paltry sum of $103.66? Men are never so regardless of their interests, and we should disregard the strongest instincts of human nature if we should conclude a sane man would so act. The only means, it seems to us, to account for his course in this matter, is upon the supposition that he was lulled into a false security by the assurances of Coolidge's attorney, and it would operate as a fraud upon him to say he should not have given them faith and credit. Then, as between appellee and Coolidge, there is no doubt in our minds that appellee is entitled to be relieved; that Coolidge could not profit by a breach of his attorney's promise to give notice.

From all the evidence in the case, we are of opinion that the assignment to his attorney, and by him to Coolidge's son, was only colorable, and to apparently divest the title to the certificate out of Coolidge. And it follows that appellee's right to relief against the son is complete. If the assignment to him was only colorable, and to obstruct appellee's efforts for its recovery, he can not be protected in the fraud, but would, if he held the title, be required, on receiving the amount of the money bid, and interest, to restore the title to appellee.

It, however, remains to determine whether appellant is protected as an innocent purchaser for value, or is chargeable with notice of the fraud. Omitting all discussion of the evidence of the apparently reckless manner in which he purchased, tending strongly to establish his want of good faith in fact, we have no doubt he is chargeable with notice of all of appellee's rights, legal or equitable. But few men acting in good faith, and paying their money irrevocably, make such large purchases on such slight, in fact almost

without, information as to the situation, improvements, and value of the property, as was done by appellant in this case. He had not seen it; he made little, if any, inquiry in reference to it, and seems to have acted with such a disregard to his interest as to establish the fact that the purchase was not real, but simply simulated, to cover it for Coolidge. The sale was made and the transaction closed four days after the sheriff made his deed, without the usual precautions taken by purchasers to protect their interest.

But if we are mistaken in believing that he was guilty of fraud in fact, he was chargeable with notice of the fraud in not giving notice before issuing the execution. Appellee, at the time appellant purchased, was in the open, visible possession of the land; and had appellant called on the tenant, he would have informed him that he was holding under appellee, and had he called on appellee he would have learned the precise nature of his equitable claim. This appellant failed to do. This court has repeatedly held that when a person purchases property in the open and visible possession of another, he purchases charged with notice of all the claims, legal or equitable, of the party in possession.

It is urged that mere inadequacy of price paid at a sheriff's sale is not ground for setting aside such a sale. This is no doubt true. But in this case there are other circumstances which, in connection with the gross inadequacy of price paid, render it equitable and just to set aside the sale. The court below did right in granting the relief sought, and the decree must be affirmed.

*Decree affirmed.*